IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| HELP HOSPITALIZED VETERANS, | ) |
| | ) |
|   Plaintiff, | ) |
| | ) Civil No. 1:13-CV-1184-TSE |
| v. | ) |
| | ) |
| AMERICAN TARGET ADVERTISING, | ) |
| INC., *et al.*, | ) |
| | ) |
|   Defendants. | ) |

**DEFENDANT'S BRIEF IN SUPPORT OF THE
MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

American Target Advertising, Inc. and American Mailing List Corporation (collectively "Defendants") state as follows in support of their motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6):

Introduction

At its essence, this case boils down to a fundamental question:  Who owns the copyright to the printed materials?  In other words, who owns the rights to the content of printed materials. The Court need look no further than the express language of the contract attached to the Complaint and hornbook copyright law to determine that the plaintiff does not own the copyright to the printed materials (i.e., the ***content*** of the printed materials and the right to use that content), but only owns the actual printed materials, furnished by Defendant American Target Advertising, that it presently has in its possession.

Statement of Facts

American Target Advertising, Inc. ("ATA") creates direct mail marketing materials that non-profit organizations such as the Plaintiff, Help Hospitalized Veterans ("HHV"), use to solicit contributions or other support.  ATA and its predecessors have been in business since 1965.  The

materials prepared by ATA are copyrightable, and ATA retains all intellectual property rights of ATA's work product.  Together with American Mailing List Corporation ("AMLC"), ATA uses its expertise to identify lists and portions thereof, called "selects," for its clients to send solicitation materials prepared by ATA to prospective donors.  Along with the creation of the concepts, copy, design, and graphics of mailing materials, Defendants assist non-profits by crafting the best mailing distribution lists for their clients' needs, identifying the most opportune time of the year to mail, and implementing other creative methods in order to achieve the greatest potential return.

     Returns on the mailings allow HHV to compile data consisting of names, contact information, demographic information, and donation history contained in the responses to the initial mailing.  This compilation is called a "House File."  The House File can belong solely to the non-profit organization, or it can be owned jointly with the direct mail agency.  In this case, the House File is owned solely by HHV.  A House File is valuable because it contains information about individuals who have expressed interest in the non-profit's mission (and who are therefore more likely contribute).  AMLC as "list manager" markets the House File, finds other non-profits that would like to use these various data collected in a House File, and rents the data to the other non-profits.  This arrangement was governed by the contract between AMLC and HHV called the List Management Contract ("LM Contract").

     HHV contracted with ATA as an independent contractor to create and produce direct mail solicitation materials to support Plaintiff's mission, namely, to distribute arts and crafts packages as therapy to veteran and military hospitals.  (*See* Compl. ¶¶ 9, 17 and Compl. at Ex. A, Section 16.)  The most recent contract between the Parties was executed on May 1, 2005 (the "DM Contract").  The DM Contract clearly states that the House File and the "<u>printed materials</u>

developed and/or prepared by ATA exclusively on behalf of [Plaintiff] shall be the sole and exclusive property of [Plaintiff]." (*See* Compl. at Ex. A, Section 5 (emphasis added).) These printed materials are the direct mail solicitation materials created by ATA, and are at the heart of this lawsuit.

Argument

A federal district court should grant a motion to dismiss "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). Although the Court must take all factual allegations made in a complaint as true, *see Eastern Shore Markets, Inc. v. JD Associates Limited Partnership*, 214 F.3d 175, 180 (4th Cir. 2000), the United States Supreme Court heightened a plaintiff's pleading requirements in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In order to survive a motion to dismiss, the factual allegations must be enough "to raise a right to relief above the speculative level" on the assumption that all of the allegations in the complaint are true. *Id.* at 555. The Fourth Circuit has concluded that the Supreme Court's decision in *Twombly* establishes a regime that is "more favorable to dismissal of a complaint" at the earliest stages of a case. *Giarratano v. Johnson*, 521 F.3d 298, 306 n.3 (4th Cir. 2008). Specifically, a plaintiff's claim must be dismissed if it fails to allege "enough facts to state a claim to relief that is plausible on its face" such that the plaintiff has "nudged [its] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In *Iqbal*, the Court established a two-step approach for determining whether a complaint may survive dismissal. First, a district court need not accept legal conclusions as true, as

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Second, only a complaint that states a plausible claim for relief should survive a motion to dismiss, and making such a determination is a "context specific" task where the court must apply its judicial experience and common sense. *Id.* Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are not more than conclusions, are not entitled to the assumption of the truth." *Id.*

Here, the Complaint is comprised entirely of bare legal conclusions that are not entitled to the assumption of truth and must be disregarded. The Complaint also contains facts that are irrelevant or out of context and should likewise be ignored as surplusage. (*See, e.g.*, Compl. ¶¶ 27-41.)

   **1.**  ***HHV Does Not Own The Intellectual Property For The Materials Prepared By ATA.***

The DM Contract's language is clear and unambiguous, and the Court does not need to look further than this language to determine that: 1) ATA owns the intellectual property, and 2) HHV does not own the intellectual property, but, instead, owns only the inventory of printed materials created as of termination. Under the DM Contract, HHV owned the House File and the <u>printed</u> materials. In other words, along with the House File, HHV owned the inventory of direct marketing mailing materials (i.e., the envelopes, solicitation letters, and other inserts such as pictures) for which it had already paid or is obligated to pay third parties under Section 2 of the contract. (*See* Compl. at Ex. A.) Under Section 3 of the DM Contract, HHV was obligated to pay Defendant six cents for each letter mailed by HHV, and this fee increased annually under the Consumer Price Index. (*Id.*)

There is no mention in the DM Contract of "work for hire," which, as explained below, are words critical to determining copyright ownership in precisely this type of circumstance. The DM Contract also establishes that ATA is an independent contractor, a fact that Plaintiff admits.  (*See* Compl. ¶ 48 *and* Compl. at Ex. A, Section 16.)  HHV has no right to the intellectual property that ATA created and owns.  The Court should dismiss Counts I and II[1] as completely inconsistent with the plain language of the DM Contract.

### A. The Terms of the DM Contract Show that ATA is the Owner of the Intellectual Property Rights of the Packages It Created, i.e., the Copy.

The terms of the DM Contract, Section 5, establish by operation of law that ATA is the owner of the copyright that protects the content of the mailing materials created for HHV.  The language of the contract dealing with ownership of information and materials, in its entirety, states:

> All donors and/or non-donors on the House File and related information **as well as all printed materials developed and/or prepared by ATA exclusively on behalf of [HHV] shall be the sole and exclusive property of [HHV].**

DM Contract, Section 5 (emphasis added).

The default position for ownership of intellectual property is that ATA, as the author, owns the copyright to the materials.  An author of a work gains the protection of copyright law the instant that the work is in a "concrete" medium.  *See* 17 U.S.C. §§ 102, 201(a) (2012).  Here, ATA and HHV chose to leave that default position undisturbed and the DM Contract reflects this choice.  ATA always owned and always retained the copyrights in the materials that it created

---

[1] Count II for "Breach of Contract" actually alleges breaches of two separate contracts by different Defendants.  The DM Contract allegedly was breached by ATA (*see* Compl. ¶ 73) and the LM Contract allegedly was breached by AMLC (*see* Compl. ¶¶ 74-78).  This section's references to Count II deal only with the allegations concerning ATA's conduct and the DM Contract.

5

and HHV retained ownership of the inventory of printed materials that had been produced pursuant to the contract. The DM Contract is clear and unambiguous on this point. HHV, however, attempts to add words to the plain language of the DM Contract so that it reads that HHV owns "the copyright to all printed materials." The DM Contract has no such language (although the parties certainly could have added such language if that was their agreement), and the Court should not read such language into an unambiguous contract.

HHV's ownership of "printed materials" stated in Section 5 of the DM Contract is not ownership of intellectual property rights, but what was printed during the term of the agreement. Section 5 does not survive the termination of the contract. Section 7.D governing survival states only "Sections 6, 8, 10 & 12" survive termination. Therefore, HHV owns only materials printed and delivered to HHV before the termination date, September 30, 2013.

The Complaint states no facts or law to contradict ATA's ownership of the intellectual property rights to its work. HHV has failed to state a claim for a breach of the DM Contract and is not entitled to the remedy of declaratory judgment. And if the Court determines that ATA owns the copyright, HHV's claims of tortious interference fail as a matter of law as well.

### B. The Work Commissioned by the DM Contract Was Not "Work for Hire."

Generally, an author of a work gains the protection of copyright law the instant that the work is in a "concrete" medium. *See* 17 U.S.C. §§ 102, 201(a). The exception to that general rule is when work is created for an employer making it "work for hire." If a work is made for hire, the employer may be considered the author even if an employee or third party actually created the work. The Supreme Court interpreted the Copyright Act of 1976 in *Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989) and held that there is a multiple step inquiry in cases involving "work for hire." First, the fact finder must determine if an employee or an

6

independent contractor created the work. *See id.* at 742-43. If an independent contractor created the work (as here), the employer may be considered the author only if the parties expressly agree, in a signed writing, that the work is considered "work for hire." *Id.* at 738 (quoting 17 U.S.C. § 101); *see also* Works Made For Hire, United States Copyright Office, available at http://www.copyright.gov/circs/circ09.pdf.

HHV admits that ATA is an independent contractor and not an employee of HHV. As an independent contractor, ATA is the protected author of the work commissioned by Plaintiff, unless there is a written agreement, signed by Plaintiff and ATA, which states expressly that the work was "for hire."

Such an agreement does not exist, and the DM Contract makes clear that Plaintiff owns only the printed materials with regard to the work created by ATA. There is no mention of "work for hire" anywhere in the DM Contract.

Plaintiff's breach of the DM Contract claim fails and it is not entitled to declaratory judgment as to the ownership of the copyright. ATA's work was commissioned by HHV, but from the outset, HHV only owned the printed materials, i.e., inventory. HHV never had any claim to the ownership of the copyright to ATA's work because the writing signed by the parties does not grant HHV those rights.

**2.** ***ATA Did Not Interfere With HHV's Contracts Or Business Relationships.***

**A.** **ATA Communicated with Plaintiff to Avoid Copyright Infringement.**

When Plaintiff chose to terminate the DM Contract, ATA contacted Plaintiff to reiterate the terms of the contact. (*See* Compl. ¶ 50.) Specifically, this memorandum stated that ATA owns all the intellectual property rights in the direct mailing materials created for Plaintiff pursuant to the terms of the DM Contract.

7

Had ATA not sent such a memorandum, its copyright protection could have been jeopardized. Laches, for example, can be a valid defense to intellectual property infringement claims if the intellectual property rights holder fails to exercise its legal rights over some period of time while infringers build up valuable business around the work. *See e.g., Ray Communs., Inc. v. Clear Channel Communs., Inc.*, 673 F.3d 294, 305 (4th Cir. 2012) (quoting 6 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 31:12 (4th ed. 2001)). ATA was proactively reminding HHV of the boundaries of the parties' agreement to avoid needless litigation. The DM Contract leaves the intellectual property rights with ATA. The memorandum states ATA's position with regard to its copyrighted materials; that position is consistent with the facts and the law.

### B. The Complaint Fails to State a Claim in Count III.

HHV fails to plead sufficient facts for its tortious interference claim under *Iqbal*. *See* 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A review of the Complaint reveals that HHV's allegations are mere "[t]hreadbare recitals of the elements of a cause of action" which cannot withstand the Court's scrutiny at the pleadings stage. (*See, e.g.*, Compl. ¶¶ 53, 54.) Further, the Complaint fails to plead a critical element of the claim.

To state a claim for tortious interference with a contract, a plaintiff must plead: 1) the existence of a valid contractual relationship or business expectancy that 2) the defendant had knowledge of and 3) induced or intentionally interfered with causing a breach or termination of the contractual relationship or expectancy with 4) resultant damage to the plaintiff. *See Chaves v. Johnson*, 230 Va. 112, 120, 335 S.E.2d 97, 102 (1985); *see also* Instruction 40.150, *Va. Model*

*Jury Instructions* (setting forth the elements a verdict must be based upon to recover for tortious interference with a contract that is not terminable at will).[2]

The Complaint fails to properly allege tortious interference with HHV's contracts. Specifically, there is no allegation that any third party breached or terminated a contractual relationship with HHV. *See id.* Plaintiff only claims that "HHVs [sic] contracts have been damaged . . ." (Compl. ¶ 84.) It is unclear what this means, or how a contract can be "damaged." Even taking all reasonable inferences in Plaintiff's favor, this does not even amount to a threadbare recitation of the requisite elements of tortious interference. It simply does not meet HHV's burden.

Plaintiff's tortious interference claim in Count III relating to the August 29, 2013, memorandum to all ATA vendors is insufficient as plead. There is no allegation of breach or termination of any contract between HHV and a third party and so Count III must fail.

---

[2] It is unclear from the Complaint if the contracts alleged to have been "damaged" were for a term or were terminable at-will. If these contracts were terminable at-will, Virginia courts require an additional showing that the defendant interfered through the use of an "improper method," which must be pled. *See Duggin v. Adams*, 234 Va. 221, 227-28, 360 S.E.2d 832, 836 (1987).

9

### C. Count IV Fails to Allege the Elements of a Tortious Interference Claim.

Count IV also fails because it does not sufficiently allege tortious interference with a business relationship under Virginia law.  To properly state such a claim, HHV must allege the existence of a business relationship of which ATA was aware, which HHV was reasonably certain would have continued but for the intentional, improper actions of ATA with resultant damage to HHV.  *See Maximus, Inc. v. Lockheed Info. Mgmt. Sys. Co.*, 254 Va. 408, 414, 493 S.E.2d 375, 378 (1997) *accord Williams v. Dominion Tech. Partners, L.L.C.*, 265 Va. 280, 289-90, 576 S.E.2d 752, 757 (2003) (quoting *Glass v. Glass*, 228 Va. 39, 51-52, 321 S.E.2d 69, 76-77 (1984)).  The only allegation remotely approaching these requirements is that HHV's "business relationships have been damaged."  (Compl. ¶ 89.)  This is plainly not enough to sustain the threshold pleading requirement for this claim.

Similar to Count III, the Complaint fails to allege requisite elements to support this cause of action.  HHV did not plead that any of its business relationships ceased because of the actions of ATA.  Plaintiff also failed to plead that it had a reasonable certainty that, absent ATA's alleged intentional misconduct, Plaintiff would have continued in the business relationship.  Failing to plead one essential element of a claim is fatal; here, the HHV fails to allege two.  Count IV should be dismissed.

### 3. *There Is No Basis For Punitive Damages.*

The Complaint requests punitive damages for Counts III and IV.  (Compl. at 12.)  As discussed in Sections 2(B) and (C) of this brief, Counts III and IV are facially insufficient.  The allegations cannot support a claim for compensatory damages, let alone punitive damages.  Further, HHV does not make a factual showing that any of ATA's behavior was "egregious" or with actual malice or such recklessness to evince a conscious disregard of the rights of others.

*See Ross v. Sigley*, No. 96-00129-H, 1998 U.S. Dist. LEXIS 3300 at *4 (E.D. Va. Jan. 30, 1998); *Puent v. Dickens*, 245 Va. 217, 219, 427 S.E.2d 340, 342 (1993).  Even accepting HHV's factual allegations as true, and assuming they are sufficient for these claims, HHV is conflating an allegation of intentional action on ATA's part with actual malice.  *See Simbeck, Inc. v. Dodd-Sisk Whitlock Corp.*, 44 Va. Cir. 54, 65, 1997 Va. Cir. LEXIS 492 at *22 (Va. Cir. Ct. 1997) (noting the "lesser scienter requirement for proof of the tort is not to be confused with the concepts of 'malice' and 'wanton' conduct which are the underlying justification for an award of punitive damages.").  HHV is not entitled to punitive damages.

Conclusion

By the plain language of the contract between the parties, ATA owns the copyright to the printed materials.  ATA owns the content.  HHV, on the other hand, owns the inventory of printed materials that was produced and delivered to HHV prior to the termination of the contract.  HHV does not own the content.  HHV's assertions can be resolved by reading the express language of the contract, and the Court should not accept HHV's invitation to add language that simply is not there.  For the foregoing reasons, and for any reasons that may be set forth in a reply brief or oral argument, Defendants respectfully request that this Court grant the motion.

DATED: October 11, 2013

                                Respectfully submitted,

                                **WEBSTER BOOK LLP**

                                */s/ Aaron S. Book*
                                Aaron S. Book (VSB No. 43868)

        Steven T. Webster (VSB No. 31975)
        James J. Holt (VSB No.78601)
        300 N. Washington St., Suite 404
        Alexandria, VA 22314
        (888) 987-9991 (telephone and fax)
        abook@websterbook.com
        swebster@websterbook.com
        jholt@websterbook.com